Your Honor, the second case of the morning, call 218-08-6. Uh, felon of the county measure of plaintiff's affidavit v. Emily Berendt, defendant, apollon. On behalf of the apollon, Ms. Jennifer L. Turriello. On behalf of the affidavit, Mr. W. Randall Blatt. Good morning, counsel. Good morning. Ms. Turriello. Good morning. May it please the court, counsel. Again, my name is Jennifer Turriello. I'm here today representing the defendant, apollon, Emily Berendt. This case comes before the court as a permissive interlocutory appeal under Supreme Court Rule 308. And it involves the scope of immunity granted under Supreme Court Rule 775. For her part, Ms. Berendt acknowledges the stringent limitations as to this type of an appeal. But the submissions of the plaintiff have treated this appeal as if it's the trial court's September 6th and November 30th dismissal orders that are under review. And, of course, as the court knows, that's not the case. In an appeal that considers certified questions, we're not here seeking case-specific relief. The trial court's reasoning isn't under review. There's not going to be any application of the law or the facts of our specific case. Instead, we're here to get some guidance and clarification about an important legal issue, promote judicial economy, and hopefully facilitate expeditious resolution of litigation. Counsel, did your client's disclosure that some of the statements weren't relevant to the claim of unauthorized practice of law and the fact statement that she intended to disclose to other authorities that information amount to a waiver of any claim of absolute immunity? No, Your Honor. And why not? The statement, and although I don't want to focus on the facts of the case, I will do that here for the purposes of answering your question because I want to do that. The statements, that statement that you've honed in on, it was a preface, if you will, to the narrative portion of this complaint that she filed. First, we don't know if it was ever disseminated to any other agencies, and that's not going to claim in this case. If it was disseminated to other agencies, it was disseminated by the plaintiff, correct? Correct, correct. No complaint that's been filed in this case has alleged a communication beyond that to the ARDC, so we don't have an instance where they've seized upon that particular statement in the narrative and then tried to make a case out of that. If they had, obviously, the caveat that Rule 775 immunity only applies to communications with the ARDC and its authorized agents would come into play here, and I'd be dead in the water, but that's not our case. She did make that acknowledgment that some of the statements were in fact not related to the alleged unauthorized practice of law, but it's our position that it doesn't matter. Where 775 immunity is concerned, we're not going through and nitpicking in the complaint every individual remark or statement to see if it has bearing on the ARDC's power and authority. I mean, relative specifically to this case, it's our position, as Lorette would say, well, I was providing background facts. I was providing a full comprehensive review. I mean, the letter she wrote to the ARDC was three pages. She submitted, I don't know, 10 exhibits, I think, that were attached. She was trying to give them everything. I think that it had some additional information, but it supplied background facts for the allegation of the unauthorized practice of law that she was making against Mr. Casamento. Except the statement that she intended to disclose to other authorities this information wasn't just background information, was it? Correct. We don't know if she did that. I don't know on this record, and again, no complaint has been filed alleging that she did that. So where your question is concerned, do I believe a waiver happened because she put that in the preface of her complaint? No, I don't believe so. And it's because 775 immunity doesn't hinge on an analysis of every individual remark in a complaint. It's the entirety of the complaint without regard for subject matter of each individual remark that matters in terms of whether or not there is protection under 775. The argument, the contrary argument that's being made hones in on that portion of the rule that talks about allegations of the unauthorized practice of law. The trial judge here thought that expressed a limitation about what Ms. Barrett could complain about to the ARDC. Is this, is 775 separate and apart from 587 of your statement? Absolutely it is. And we've got a lot of completing of analysis that's going on here. Again, if we were talking about the common law litigation privilege or judicial proceeding privilege as it's sometimes called, even quasi-judicial proceeding privilege, I'd be dead in the water because I acknowledge, I'll sit here and say there is a subject matter limitation with respect to that type of protection. We have to look to see if the alleged defamatory matter has bearing on the litigation. That is a limitation that is expressed or it comes from case law and the restatement as to the application of that type of a privilege. But with rule 775 immunity, there is no expressed limitation to that fact. I think that is. I believe that the clause that's been honed in on to support that there is that limitation is simply delineating, first of all, that clause got added to the rule in 2011. It wasn't there originally when the rule got enacted in 1989. It's just delineating another type of grievance that the ARDC processes to which the protection. And do you believe the privilege is there to encourage people to make these, to make a full complaint to the ARDC? Absolutely. Absolutely. We want candid and full discourse. And let's look at the form that's used. It's a preprinted form that asks for the complainant to explain their complaint. So you've got a form asking and inviting a narrative, asking and inviting exhibits. There's no admonition anywhere on the form saying, oh, if you don't confine your remarks to something within the ARDC scope and authority, you're going to be liable civilly. There's nothing on the form that says that. We want people to get as much information as possible. We want complainants to feel free to come forward and speak freely. The ARDC has many functions. Like many Illinois agencies, it's strapped for cash, resources, personnel. That kind of disclosure, full and frank and candid and all-encompassing, lets the ARDC investigator do his job, do his or her job quickly, efficiently. And if there's no merit to a complaint, as was found here, move on to the next case. Devote resources elsewhere where they need to go. And the complaints, if something is acted on, then they may become public. But if it's not acted on by the ARDC, they remain private and confidential. That's correct. And even another public policy reason why we shouldn't hold somebody who's trying to provide the ARDC with as much information as possible and being comprehensive, why we shouldn't subject them to civil liability and allow them to enjoy this immunity under 775. You state Wachowski for the proposition that it's an absolute immunity, correct? I do, but I recognize that Wachowski was an application of the judicial proceeding privilege. Right. Right. But the language I'm looking at in Wachowski says on page 865, at the very end of 865, thus we conclude that statements made to the ARDC regarding attorneyless conduct, no matter how false or outrageous, are simply beyond the scope of civil complaint. Is there a limitation of any sort where it says regarding attorneyless conduct? The statements made to the ARDC regarding attorneyless conduct. Do you see that as any type of limitation? Not on 775 immunity because the case was about the judicial proceeding privilege. I do like, however, in a couple of sentences before the quoted sentence you just read. The public policy argument. It talks about although there is apparently some disagreement on the issue among jurisdictions concerning whether a preliminary complaint to an agency such as the ARDC should be protected by an absolute privilege, the better view in our judgment is that an absolute privilege exists for any statements, any statements made during any step preliminary and necessary to a judicial or quasi-judicial proceeding. Any steps. I think Rule 775 embodies that principle. We're not going to concern ourselves with line by line going through a complaint to the ARDC and striking out those things that we find to be, you know, object or a respondent, if you will, would find to be objectionable, vilifying, disparaging. That will occur in any communication to the ARDC, which will result in a situation where the immunity never gets fully realized, as it has here. We got immunity. The trial judge gave us the immunity to the extent the complaint tried to assert liability against my client for alleging an unauthorized practice of law. But we can't get out of the case fully because of the notion that, oh, well, she didn't confine her comments specifically to what the ARDC's power and authority in the scope of its inquest would be. And our position is she doesn't have to. So you're looking for an answer to the certified question that would let you out of the case totally. Correct. Getting to the point of how we meet the standards for Rule 308, because that kind of goes to that. If we get an answer in the affirmative to the certified question, which is what we are seeking, that will wrap up entirely the libel claim. There was only one other count in the second amended complaint that was at issue. It's a malicious prosecution claim. It's already been dismissed with prejudice. So presumably there would be the right to then go appeal that if plaintiff chose to do so. But activity at the trial court level would certainly be concluded. Yes. I think the public policy reasons, besides just the plain language of the rule itself, which we know we have to look at, the rule gets interpreted the same as a statute. We've got to look at the plain language. We've got to try to discern the drafter intent and give it a fact. And here, the only express caveat to application of Rule 775 immunity is that you've got to make the communication to the ARDC or any of its authorized agents. That's the only express limitation. So confidentiality is clear. And therefore, if there is something that really is not pleasant or maybe not even true, it's not going to get out because this is just the ARDC that is getting this complaint only. Correct. And that's just another public policy reason to answer this question in the affirmative because it's not going out anywhere. It's just to the ARDC. In this case, did it get out? We have no knowledge that it did. No, it's not on our record. She makes that, as Justice Senoff asked at the beginning, she makes that acknowledgement at the preface of her narrative, but there has never been a complaint predicated on that she did leak it or that it got out. Never. Not in this case. And there's been three iterations of this complaint. We've never had that. So, yeah, that's an important public policy reason why we want an answer in the affirmative to this particular certified question. And as I said, if we're going to go through line by line and scrutinize every communication to the ARDC, inevitably a respondent will find something in every single one, like I said, that's disparaging. And it would preclude people from wanting to make a complaint. Absolutely. It will result in self-censorship. And that free flow of information that the rule is supposed to be fostering is going to be hindered. Absolutely. There really aren't, and we've already touched upon Likowski, there aren't a whole bunch of cases that discuss this. That's why we're here. There are no cases, actually, that discuss this. And my opponents' cases all center on an entirely different privilege, one not at issue here. Again, that's why we're here. The only one that speaks to, there's the Skolnick case, and in that case it was held that 775 immunity didn't apply because not only were statements made to the ARDC, but statements were made to a firm's clients. And that was the triggering of that caveat that, okay, then you can't have the immunity because you've gone beyond the ARDC here and you're disparaging statements. Now, granted, in that case, the statements had to do with professional misconduct. It was the same in the other cases as well. We haven't had a case or seen a case where somebody has said, well, wait a second, you've gone beyond the professional realm. You've gone beyond accusing me of something in my judicial or my legal capacity as an attorney. But that's why we're here seeking guidance. So with that being said, that is the bulk of my prepared remarks for today. If the panel has any other questions, I'm happy to answer them. Thank you. You'll have a chance for rebuttal. Thank you very much for your time. You're welcome. Mr. Fowden. Good morning, if it pleases the Court. Good morning. This is my panel. Maureen and Mr. Kessler, myself, is in the back, so thank you for that. My last couple of visits here, I've just said, if you have any questions, because I know you're familiar with the facts and I don't want to be redundant. Well, I have a question, counsel. Yes, please do. You did not engage in any statutory analysis in your brief of the Supreme Court rule, and the relief you asked from this Court was to affirm the trial court's order denying the plaintiff's cause of action for libel. However, this case is here on Supreme Court Rule 308, which is a certified question. Doesn't that restrict our appeal to answering the certified legal issue which the trial court sent here, and that is whether the statements unrelated to unauthorized practice of law in the complaint submitted to the ARDC are immunized under Supreme Court Rule 775? Aren't we restricted to that? Excellent question. And you don't address that in your brief. So how are we to know what your position is with regard to this certified legal issue? I'm sorry if I didn't make that clear. I thought that the answer we have is no. It doesn't provide you with absolute immunity. And I was very confused by the way the case was pastored with the Rule 308 because our statements unrelated to the unauthorized practice of law in a complaint submitted to the Attorney Registration Disability Commission immunized under Supreme Court Rule 775. And the answer is no. I didn't know how to respond other than I first relied on a couple of things. One, if I may, 775 is kind of an anomaly. Mr. Cassano is an attorney. They just put that rule in, I think, in the last five years. I had to find it looking up ten minutes that they assigned that to the ARDC. The Supreme Court has. Mrs. Barron is an attorney, as is her husband. She's the mayor. And so the arguments, if I could address what is troubling me so much, that the reason they're suggesting that a privilege would be appropriate is so that the people can speak freely and there's no retaliation. So this is not complaining about me or some other attorney. This is complaining about a painting contractor. What they're submitting is holding themselves out as an attorney. Correct? Well, they alleged that, but the court found, I think. But I understand what the court found, but with respect to the ARDC, when she went to the ARDC, she made the complaint based upon somebody who is holding themselves out as an attorney. Correct? That's what she alleged. So when she makes those allegations, she fills out the complaint saying this person is holding themselves out as an attorney, which is a violation of the ARDC. Yes. So how are you confused as to why they would go to the ARDC? Well, the other problem we have is the language of Rule 775. And I think Your Honor, Justice Klein had mentioned that, that the way it is written, it is seemingly in trial courts that it has to be regarding the unauthorized practice of law. And I think I quoted at length Justice Judge Meyer, who said, I got to draw the line there because I don't see what those allegations are that we listed in there have to do that he's connected with silent citizens, terrorism, staged arrests, et cetera. He's going to rip down the city. Where is the libel or the slander in that statement? Who other than the ARDC gets that statement? Well, as we've said in the brief, and I didn't say it, Mayor Barron said, this is going to other people, other authorities. And I heard counsel say, well, we don't know. I mean, how would I know? It's not my claim. All I can do is judge on the record. She said it is going to other places. One other thing that is. . . Do we even care about that at this stage in the 308? I mean, the question is a very specific question. Basically, it's does absolute immunity apply to 775 disclosures or does it not? I think, Justice, it depends on the circumstances. It's not a clarified line. You have to look at the circumstances here. You agree, though, that the statements made to the ARDC are private and confidential, correct? No. I don't know how to answer that. I think the next rule, 779, has a procedure on it. And this thing, ultimately, they don't privately take it right to the circuit court, so it goes elsewhere. How far it went internally, I don't know. And the other thing, all I can judge by is what the record says is that she did disclose it. Who took it to the circuit court? I don't understand that either. You said they took it to the circuit court? No. I said that under Rule 775, the next rule, I think it's 779, is procedurally, if they say let's go on to the next step, it goes on. Right. And then it may very well become public. I mean, the newspaper may be involved, everything may be involved, if it goes on past the initial investigator stage. I mean, an initial investigation against an attorney, the attorney sometimes is asked to respond, sometimes is not. And then many times, most times, the NRDC just sends out a letter saying we've reviewed the complaint, there's nothing to it, it's not going any further. If it ends at that point, would you agree that everything that's been submitted and said is private and confidential? Yes, sir, other than what she said by her own admission that I've already got, that we're sending this out to other parties. I didn't write that. She wrote it. She said it. And how do I know what she did? The other thing I want to emphasize is all the background. I have my favorite article from 1902 from the Columbia Law School, and they were wrestling with this concept long ago about a person's rights and their reputation versus it being assaulted. But I think everything we've read, that it has to be pertinent to the case or the issue we're talking about. And that's where Judge Meyer strongly emphasized it. What does it have to do with unauthorized practice of law if you're a sovereign citizen or in terrorism or staged arrest and you're going to take down a town and et cetera, et cetera? That's my gripe. And I think, as you said, I'm redundant, but when they say make the complaint to the ARDC, it's talking about the allegations regarding the unauthorized practice. And I think the plain meaning of these allegations that she set forth in her complaint to the ARDC about terrorism and the criminal and the attempt to destroy Chief Page and bring him down, they are in no way related. And some of the cases even say, well, it might give you a little leeway, but if it's just so palpably unrelated, that isn't privilege. Well, but that's the Malavitas case, and that's distinguishable, is it not, because that involved a judicial proceeding privilege, not Supreme Court Rule 775. Well, Your Honor, I found, again, even as last night, there's only five cases that I could see regarding annotations on 775. As counsel has said, there's really not a lot on there. But I think the purpose of that is I haven't had problems with that. Why do we have special rules for that, not the plumbers or the doctors or anything? But anyway, I think the purpose of that rule was about lawyers, and they added non-lawyers. And the protective part of it, that they're privileged, we aren't to be afraid to get a complaint against a painter. Let's not go way out there. But, I mean, as a lawyer, you have a lot of power and you have a lot of ability to do some things that could really go outside of our profession and outside of our professional rules of conduct, whereas a painter might not. I mean, so let's not compare apples and oranges. You know, the ARPC was put in place so we as lawyers can monitor each other and monitor our conduct. In order to encourage people to make sure that we are on a straight and narrow, how do you say you make a complaint that you're not going to be protected? How is that going to encourage anybody to make a complaint against some lawyer who they know is stealing money? Or they know who is getting drunk and high and going to court? How is that going to encourage people to make complaints if you say, oh, you can make a complaint, but you're not protected? Wasn't that the whole basis behind 775? Justice Shostak, in this case, though, it doesn't apply to a complaint to a lawyer. The person making the complaint is a lawyer, knows Mr. Kasserman is a painting contractor, so she doesn't have any fear of retaliation. There's no need for any protection. Some lawyer who we're complaining about is going to retaliate against you. I know. I think you're not following the line of thinking, but go ahead. Well, I'm sorry. Maybe my line of thinking is a little distorted. Well, I think the thing is that... The complaint was put because he was putting himself out as an attorney. He was conducting himself as an attorney. When he went online and said, if you have a complaint with the village, call me for your representation or something to that effect. And that was the reason that it was reported to the ARDC. Not because the mayor is a lawyer, but because your client was holding himself out as an attorney. Is that correct? Well, I disagree with the facts. Well, the ARDC itself said he wasn't holding himself out as an attorney. Correct. That's correct. So that's what they ruled. And then you filed a lawsuit saying she defamed him to the ARDC. And now you're saying, how did it even get to the ARDC? Which is not even really relevant because we're here on a 308 question, was if somebody reports something to the ARDC, is it privileged or is it not privileged? I can answer that, and I want to say, if it is pertinent to the issue and the question, the putative language, which here's that. As Justice Judge Meyer repeated, terrorist, a sovereign citizen, arrest, destroy Chief Page and bring down the village government, that has absolutely nothing to do with unauthorized practice of law. And I think the case is safe. If 775 provides for absolute privilege. Yes. If it does, if it provides for absolute privilege, then are these statements privileged? But, Your Honor, the problem I have, and I obviously need your help, is that everything I've read, and you said restatement section 587, I think that's all underpinning this. It has to be pertinent to what? No, no, no, my question is very specific. If it's an absolute privilege. Yeah. I mean, absolute. Right. Which basically is whatever I say is privileged. Then it doesn't matter whether it's pertinent or not, correct? No, I think 587 is the underpinning, 586, 588. So an absolute privilege is not absolute. If the language, the putative language, the language we're concerned with, is not pertinent to you. Okay. Because every case that I've read that talks about 775, and none have gone really into this issue at all, but every case talks about 775 in terms of an absolute privilege. And you're saying that we're going to have to read underneath that to see if it's, to read some limitation that it has to apply to what's being complained. If I may simply, I don't want to be redundant, but I think the rule itself says if you're going to make a complaint. Which rule? 775. What did you say? I think we did it, but Justice Hyman did it in the beginning saying it has to be. Where does it say that in 775? I have. The rule says any person who submits a claim to the Client Protection Program, or who communicates a complaint concerning an attorney, or allegations regarding the unauthorized practice of law to the Attorney Registration and Disciplinary Commission, or its administrators, staff, investigators, or any member of its boards, shall be immune from all civil liability, which, except for this rule, might result from such communications or complaint. The grant of immunity provided by this rule shall apply only to those communications made by such persons to the Attorney Registration and Disciplinary Commission, its administrators, staff, investigators, and members of its boards. Yes. So what part of that? Well, I would direct, if I may, or my thoughts are any person who submits a claim to the Client Protection Program or communicates a complaint concerning an attorney or allegations regarding the unauthorized practice of law. Isn't that what she complained to? Pardon? Isn't that what she complained about? She had complained about the unauthorized practice of law. Correct? But the protection, I think, only extends if those allegations are pertinent to that. Where does it say that in the rule? It doesn't, but you have to look. I believe it. Restatement of Torts 586, 587. Did 775 incorporate 586 and 587? I think you can't ignore it. That's what every other case has. What other case has that? Pardon? You're looking at the malvitis case, which was a judicial proceeding from which that had nothing to do with the case. But they're all analogous, I think. When you're slandered or libeled and they're saying, we're absolutely privileged, and some of the quotes I have, that's the good old 1902 Columbia article or whatever it says, you have to watch what they're saying. What does that have to do if he's a terrorist who's going to destroy the town with the unauthorized practice of law? It's the communication saying you were standing and handing out a card or you were soliciting or something like that. That is something that's governed by 775. In a judicial privilege case, those communications are relayed either in public filings or in open court, where the press could be there, your relatives, anybody could be there. Here, this is private and confidential. Do you see a difference between a communication between an individual and an agency that's private and confidential and an individual and a system that is open to the public? I can see what you're saying, but it's still on the list. I don't want my name going to the IRDC accusing me of libelous things. I don't care if it's the Ringling Brother Circus. She has communicated allegations there, obviously to us, libelous, and the protection is granted only to allegations she's making regarding unauthorized practice of law. I would only ask if you would, Judge Meyer, I respect very highly. I know you all do. But he says that troubles me. How do you go in there? You could say he uses the word pedophile. Chuck Yasmin is a pedophile. When you put that in there, that's privilege. It goes beyond the bounds. The rule of 775 has to take into account, if it's related to the issue at hand, and we've hit that language, allegations regarding unauthorized practice of law. How is it, if he's a terrorist, he's going to take down a city related to that? That's the problem. And I must confess to you, too, I am very confused with Rule 508. That's just propped up. And in our practice, every other case under defense is sort of 508. Counsel, I think your time is up, but I'd let you wrap up. I have one other brief question, please. The 1902 article you referred to, have you cited that in your brief, Counsel? No. I just found it last night, and it's a matter of just, you know, I mean, it's like. . . All right. Well, that's the answer to my question. He didn't know whether it could be. . . Well, I can cite it here. I can reference it. I mean, it's a great article. Thank you, Mr. Bond. From the Yale Law School. Would you like to wrap up, please? Oh, yes. Thank you so much for your time. And I just have a view of what that 7 asks you to consider what 775 is for. By its own language, it's limited. You can't just look at it stale. You have to look at the background of it has to be pertinent. Thank you for your time. Thank you so very much. Mr. Yellow. I really don't have much to add to my prior comments. I'm happy to answer any additional questions that the panel might have. But beyond that, I just want to express thank you again, Your Honors, for your time and consideration of the case on behalf of my client. Thank you. Thank you very much. At this time, the Court would like to thank counsel for their arguments this morning. We'll take the matter under advisement and render a decision in due course. Court stands adjourned for the day.